**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **In re:**<br><br>**LANDEN DALE HOOPER**<br><br>**Debtor.** | ) | **Case No. BK-26-12358-SAH**<br><br>**Chapter 7** |
| **AMANDA PAL an individual, JOSEPH PAL, an individual, and AMANDA PAL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOZSEF LASZLO MATTHEWS PAL**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**LANDEN DALE HOOPER,**<br><br>**Defendant.** | ) | **Adv. Pro. No.** |

**<u>PLAINTIFFS' ADVERSARY COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY AND JUDGMENT PURSUANT TO 11 U.S.C §523(a)(6)</u>**

COME NOW, Amanda Pal, an individual, Joseph Pal, an individual, and Amanda Pal, as Personal Representative of the Estate of Jozsef Laszlo Matthews Pal ("Plaintiffs") and bring this complaint against Landen Dale Hooper ("Defendant"), objecting to the dischargeability of Defendant's potential debt to Plaintiffs pursuant to 11 U.S.C. §523. Plaintiffs respectfully request that the Court deny the discharge of the debts potentially owed by Defendant to Plaintiffs. In support, Plaintiffs state the following:

## JURISDICTION

1. On July 14, 2026, Defendant filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Western District of Oklahoma, thereby commencing the above-referenced case.
2. As of the date of this Complaint, Defendant has not been granted a discharge for his debt.
3. This complaint is timely because the deadline to file an adversary proceeding complaint under 11 U.S.C §523(a)(6) is October 13, 2026.
4. This is an adversary proceeding in which Plaintiffs seek a determination that any potential debt owed by Defendant to Plaintiffs arising from his willful and malicious conduct is nondischargeable pursuant to 11 U.S.C. §523(a)(6).
5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and 11 U.S.C. §523.
6. Additionally, this case is a core proceeding pursuant to 28 U.S.C. §157.
7. Plaintiffs consent to the entry of final orders or judgment by the Court on any issue in this adversary proceeding pursuant to F. R. Bankr. P. 7008.

## PARTIES

8. Plaintiffs Amanda Pal and Joseph Pal are residents of the State of Oklahoma and the natural parents of Jozsef Laszlo Matthews Pal.
9. Plaintiff Amanda Pal as Personal Representative of the Estate of Jozsef Laszlo Matthews Pal has been granted the legal authority by the Honorable Bethany Stanley to act and operate on behalf of the Estate of Jozsef Laszlo Matthews Pal.
10. Amanda Pal was granted said authority on January 8, 2026, in Case No. PB-2025-432 in Cleveland County.

11. Additionally, Plaintiffs are potential judgment creditors of the Defendant.

12. Defendant in this case has at all times relevant been a resident of the State of Oklahoma.

## STATEMENT OF FACTS

13. Jozsef Laszlo Matthews Pal ("Joe") was born on February 7, 2002, in Springfield, Missouri to Amanda and Joseph Pal.

14. At the time of his death, Joe was a 23-year-old college student attending The University of Oklahoma in Norman, Oklahoma, where he was a member of the United States Army National Guard and pursuing his education with the goal of entering the healthcare profession.

15. On the evening of March 1, 2025, Joe went to Campus Corner with teammates following a rugby match earlier that day.

16. That same evening and into the early morning hours, Defendant arrived at Campus Corner to meet and consume alcohol with other individuals who are named in the State Court Action.

17. At approximately 3:00 AM on March 2, 2025, Joe walked toward the white Ford F-250 that Defendant and his friends were sitting in at The Revv parking lot and pulled on the handle of the locked rear passenger door.

18. Joe did not gain entry into the vehicle.

19. Defendant, seated in the rear passenger seat, lowered the window and Joe asked for a ride.

20. Joe did not brandish a weapon, did not enter the vehicle, and did not strike or physically touch any of the occupants.

21. Joe did not present an imminent threat of serious bodily harm that would justify the use of deadly force in self-defense.

22. Defendant and others exited the vehicle, approached Joe, and a verbal exchange began.
23. During the verbal exchange, Joe was pushed backward approximately fifteen (15) feet away from the vehicle.
24. At no time during the encounter did Joe strike or physically assault the Defendant.
25. During the verbal exchange, Joe stated, “Marines are pussies.”
26. After Joe’s statement and without warning, Defendant delivered a fatal blow to Joe’s head.
27. Defendant later admitted to law enforcement officers, “I overreacted, and I hit him.”
28. The force of the blow caused Joe to fall backward and strike the back of his head on the concrete parking surface.
29. Upon striking the concrete, Joe immediately lost consciousness and did not regain meaningful consciousness for the remainder of his life.
30. After Joe fell and lay motionless on the pavement, Defendant remained at the scene.
31. Joe was unconscious, bleeding from the back of his head, and exhibiting abnormal breathing sounds consistent with severe medical distress.
32. Emergency services were not immediately summoned.
33. During the period following the strike, cellphones were used by Defendant and others to record video and communicate with others.
34. In one Snapchat video, Defendant can be heard stating, “hide your fucking hoodie.”
35. For approximately thirty to forty (30-40) minutes, Joe lay unconscious on the concrete while no one, including Defendant, summoned emergency medical assistance.
36. Defendant placed a 911 call at approximately 3:47 AM.
37. Emergency medical personnel later arrived and assessed Joe.

38. At the time of EMSSTAT assessment, Joe's Glasgow Coma Scale score was documented as 4, indicating a profound coma.

39. Joe was transported for emergency neurosurgery.

40. Joe remained on life support until March 7, 2025, when life support was withdrawn.

41. The Medical Examiner certified the cause of death as Acute Blunt Force Trauma to the Head Sequela, due to Assault, and the manner of death as Homicide.

42. On March 2, 2026, Amanda Pal, an individual, Joseph Pal, an individual, and Amanda Pal as Personal Representative of the Estate of Jozsef Laszlo Matthews Pal commenced their State Court Action against Defendant and others in Cleveland County, Case No. CJ-2026-337.

43. Plaintiffs allege Assault and Battery, Negligence, and Voluntary Undertaking as claims against Defendant in the State Court Action.

44. There is no judgment currently rendered against Defendant in the State Court Action.

**FIRST CAUSE OF ACTION**
**Willful and Malicious Injury by Debtor to Another Entity or to the Property of Another Entity**
**(11 U.S.C. §523(a)(6))**

45. Plaintiffs reallege all facts and allegations set forth above.

46. 11 U.S.C. §523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

47. Defendant's alleged act of striking Joe in the head was deliberate and intentional. The nature of the act, the location and force of the blow, and the conversation and circumstances immediately preceding the blow support the inference that Defendant intended to injure Joe or knew that a physical injury was substantially certain to result.

48. Plaintiffs allege that Joe was unarmed, the vehicle was locked, and Defendant chose to exit the vehicle to confront Joe. Joe did not strike or touch Defendant and did not present an imminent threat when Defendant struck Joe. Defendant's conduct was wrongful and without just cause or excuse.

49. Defendant admitted to law enforcement, "I overreacted, and I hit him."

50. Defendant's willful and malicious conduct did not end with the blow to Joe's head. Defendant observed Joe unconscious and in obvious medical distress for thirty to forty (30-40) minutes before he summoned emergency medical personnel.

51. Plaintiffs allege that Defendant's failure to promptly summon emergency medical assistance was more than mere negligence. Having struck Joe and observed him lying unconscious, Defendant had reason to recognize the seriousness of Joe's condition and the need for immediate medical attention. Plaintiffs allege that Defendant's decision to delay seeking help, despite the obvious risk of further injury, supports the claim that his conduct was willful and malicious.

52. Defendant's actions in intentionally striking Joe in the head were willful and malicious and caused the injuries that ultimately resulted in Joe's death. Defendant's following conduct, including the delay in summoning emergency medical assistance, further supports Plaintiffs' allegations concerning the wrongful nature of his actions. Accordingly, any debt arising from Defendant's willful and malicious conduct is nondischargeable pursuant to 11 U.S.C. §523(a)(6).

**WHEREFORE,** Plaintiffs respectfully request that this Court determine that any debt potentially owed by Defendant to Plaintiffs arising from his willful and malicious conduct towards

Jozsef Laszlo Matthews Pal is nondischargeable pursuant to 11 U.S.C. §523(a)(6) and grant such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

/s/ Chloe N. Glass

Woodrow K. Glass, OBA #15690
Geoffrey A. Tabor, OBA #32880
Chloe N. Glass Weatherford, OBA #36646
**GLASS & TABOR, LLP**
1601 36th Avenue NW
Norman, OK 73072
Phone: (405) 360-9700
Fax: (405) 360-7902
woody@glasstaborlaw.com
geoffrey@glasstaborlaw.com
chloe@glasstaborlaw.com
**ATTORNEYS FOR PLAINTIFFS**